ORIGINAL

PUEO KAI MCGUIRE
P.O. Box 1186
Hilo, Hawaii 96721
Tel. No. (808) 896-2821
*pueomakai@gmail.com*

Pro Se Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

PAID
LJ

JUL 17 2023

at 12 o'clock and 30 min. P M
CLERK, U.S. DISTRICT COURT   LS
CC: FILED AT COUNTER

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PUEO KAI MCGUIRE,<br><br>          Plaintiff,<br><br>     vs.<br><br>COUNTY OF HAWAII; MITCHELL D. ROTH; KELDEN WALTJEN; KATE PERAZICH; SYLVIA WAN; JOHN and/or JANE DOES 1-10,<br><br>          Defendants. | CIVIL NO.<br>**C V23 00296 JAO KJM**<br><br>COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL |

## COMPLAINT FOR DAMAGES

Plaintiff, PUEO KAI MCGUIRE ("Plaintiff"), is informed and believes, and

thereon alleges, as follows:

I.     INTRODUCTION

1.     This is an action to redress the deprivation under color of statutes,

ordinances, rules, regulations, customs, policies, practices, and/or usages of rights,

privileges, and immunities secured to Plaintiff by the Fourth, Fifth, and Fourteenth

Amendments to the Constitution of the United States, inter alia, Article I, Sections 2, 5, 6, and 7 of the Constitution of the State of Hawaii, inter alia, and 42 U.S.C. Section 1983, et seq.

2.      Plaintiff contends that he was wrongfully seized, denied his liberty, denied adequate, effective, and meaningful access to the courts, denied due process, and maliciously prosecuted due to the acts of Defendants in violation of applicable provisions of the Constitution of the United States and the Constitution of the State of Hawaii, inter alia.

3.      This case arises under the Constitution and statutes of the United States of America and the State of Hawaii, inter alia.

4.      The claims asserted herein present a question of federal law thereby conferring jurisdiction upon the Court pursuant to 28 U.S.C. Sections 1331, 1343(3), 18 U.S.C. Section 1964(c), and 42 U.S.C. Section 1983, inter alia. Any and all state law claims contained herein form part of the same case or controversy as gives rise to Plaintiff's federal law claims and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. Section 1367.

5.      Venue resides in the United States District Court for the District of Hawaii pursuant to 28 U.S.C. Section 1391(b), inter alia, as all of the events and/or omissions described herein occurred in the State of Hawaii.

II.     PARTIES

6.     Plaintiff is and has been a resident of the County and State of Hawaii, at all times pertinent hereto.

7.     Defendant COUNTY OF HAWAII ("Hawaii County") is a municipal corporation organized and existing under the laws of the State of Hawaii as a political subdivision thereof at all times pertinent hereto and is liable here in connection with actions and omissions taken by one of more of its officers, officials, directors, employees, and departments, including the Office of the Prosecuting Attorney ("OPA") and Hawaii Police Department ("HPD")

8.     Defendant MITCHELL D. ROTH ("Defendant ROTH") is and has been a resident of the County and State of Hawaii, former duly elected Prosecuting Attorney for Hawaii County, and duly elected Mayor for Hawaii County at all times pertinent hereto and is named in his individual capacity and in his official capacities.

9.     On or about December 10, 2019, Defendant ROTH formally announced he was running in the election for Mayor of Hawaii County.

10.    Defendant KELDEN B.A. WALTJEN ("Defendant WALTJEN") is and has been a resident of the County and State of Hawaii, duly elected Prosecuting Attorney for Hawaii County, and a former Deputy Prosecuting Attorney employed by Hawaii County at all times pertinent hereto and is named in his individual capacity and in his official capacity.

3

11.     In or between January 2020 and February 2020, Defendant WALTJEN formally announced he was running in the election for Hawaii County Prosecuting Attorney

12.     Defendant KATE PERAZICH ("Defendant PERAZICH") is and has been a resident of the County and State of Hawaii, and Deputy Prosecuting Attorney employed by Hawaii County at all times pertinent hereto and is named in her individual capacity and in her official capacity.

13.     Defendant SYLVIA WAN ("Defendant WAN") is and has been a resident of the County and State of Hawaii, and Deputy Prosecuting Attorney for Hawaii County at all times pertinent hereto and is named in her individual capacity and official capacity.

14.     Defendants JOHN and/or JANE DOES 1-10 ("DOE DEFENDANTS") are individuals or persons whose true identities and capacities are as yet unknown to Plaintiff and her counsel, despite diligent inquiry and investigation, and who acted herein as described more particularly below in connection with the breaches of duties and/or violations of law alleged herein and who in some manner or form not currently discovered or known to Plaintiff may have contributed to or be responsible for injuries alleged herein. The true names and capacities of DOE DEFENDANTS will be substituted as they become known.

DOE DEFENDANTS are sued herein both in their individual and official capacities.

15.    At all relevant times herein, Defendant ROTH possessed and exercised final policy-making and supervisory authority on behalf of Hawaii County and with respect to OPA's administration and operation and the acts and omissions of Hawaii County employees, including but not limited to himself, Defendant PERAZICH, Defendant WAN, DOE Defendants, HPD employees, and employees/agent of Hawaii County.

16.    After December 2020, Defendant WALTJEN possessed and exercised final policy-making and supervisory authority on behalf of Hawaii County with respect to OPA's administration and operation and the acts and omissions of Hawaii County employees, including but not limited to himself, Defendant PERAZICH, DOE Defendants, and OPA employees.

III.    FACTUAL ALLEGATIONS

i.  **The Hawaii Police Department Investigation**

17.    On or around January 13, 2020, the State of Hawaii Office of the Public Defender ("OPD") employed Plaintiff as a Deputy Public Defender in Hilo, Hawaii.

18.    On or around January 20, 2020, HPD Officers Lawrence M. Kobayashi ("Officer Kobayashi") and Officer Chuck Cobile ("Officer Cobile")

were assigned by HPD Central Dispatch to investigate a report of a possible sexual assault in Hilo, Hawaii.

19.    On or around January 20, 2020, Officers Kobayashi and Cobile contacted the reporting party, Reanna Ferreira ("Ms. Ferreira"), a twenty-seven (27) year old female, and documented her statements.

20.    Ms. Ferreira is the biological daughter of a detective employed by HPD ("Ms. Ferreira's Father").

21.    On or around January 20, 2020, Ms. Ferreira falsely stated to Officers Cobile and Kobayshi that Plaintiff was the perpetrator of the alleged assault.

22.    On or around January 20, 2020, Officers Kobayashi and Cobile clearly viewed Ms. Ferreira's person and observed no visible injuries to corroborate Ms. Ferreira's statements.

23.    On or around January 20, 2020, Officer Kobayashi photographed Ms. Ferreira and recovered the clothing Ms. Ferreira was wearing at the time of the alleged assault.

24.    On or around January 20, 2020, immediately following their initial contact with Ms. Ferreira, Officers Kobayashi and Cobile suspected that Ms. Ferreira fabricated her assault and did not believe Plaintiff assaulted Ms. Ferreira.

25.    On or around January 20, 2020, Officer Cobile showed Ms. Ferreira a photographic lineup including a photo of Plaintiff and Ms. Ferreira identified Plaintiff as the suspect.

26.    On or around January 20, 2020, Detective Aaron Carvalho ("Detective Carvalho") interviewed Ms. Ferreira and documented several of her statements.

27.    On or around January 20, 2020, Ms. Ferreira falsely stated to Detective Carvalho that nothing intimate occurred between Ms. Ferreira and Plaintiff prior to January 20, 2020.

28.    On or around January 20, 2020, Ms. Ferreira informed Detective Carvalho that Plaintiff resided at 53 Nahala Street, Hilo, Hawaii 96720.

29.    On January 20, 2020, Officer Cobile arrested Plaintiff at his residence for the offense of Sexual Assault in the First Degree in accordance with Hawaii Revised Statutes §707-730 and Plaintiff was transported to the Hilo Police Station.

30.    On January 20, 2020, Detective Carvalho obtained a search warrant to search Plaintiff's residence.

31.    On January 20, 2020, Detective Carvalho and several other HPD officers, including Officer Acob, executed the search warrant at Plaintiff's residence.

32.     On January 20, 2020, while executing the search warrant on Plaintiff's residence, Detective Carvalho and HPD officers/agents observed no evidence of a struggle in Plaintiff's bedroom.

33.     On January 20, 2020, while executing the search warrant on Plaintiff's residence, HPD officers/agents and Detective Carvalho observed two damp bath towels in Plaintiff's bedroom.

34.     On January 20, 2020, while executing the search warrant, Officer Clarence Acob ("Officer Acob") interviewed Plaintiff's roommate, Dr. Walter Grenell ("Dr. Grenell").

35.     On January 20, 2020, Dr. Grenell informed Officer Acob that he first met Ms. Ferreira on January 17, 2020, and that she had been sleeping over with Plaintiff at the residence between January 17, 2020, to January 20, 2020.

36.     On January 20, 2020, Dr. Grenell informed Officer Acob that he had conversed with Ms. Ferreira and Plaintiff on several occasions while they were cooking dinner together, watching movies, cuddling, laughing, and flirting on the nights of January 17, 2020 and January 19, 2020, at Plaintiff's residence.

37.     On January 20, 2020, Dr. Grenell informed Officer Acob that his bedroom is directly adjacent to Plaintiff's bedroom.

38.     On January 20, 2020, Officer Acob asked Dr. Grenell if he remembered hearing any commotion coming from Plaintiff's bedroom and Dr.

Grenell informed Officer Acob that he did not hear any loud noises, commotion, or anything out of the ordinary.

39.    On January 20, 2020, Officer Acob conducted neighborhood checks and none of the interviewees reported hearing any loud noises, commotion, or anything out of the ordinary.

40.    On January 20, 2020, Detective Carvalho re-interviewed Ms. Ferreira for the purpose of reclarifying her previous statements based on inconsistencies with the statements of Dr. Grenell and neighbors.

41.    On January 20, 2020, Detective Carvalho asked Ms. Ferreira about her conversation with Dr. Grenell on January 19, 2020, and Ms. Ferreira stated that she did not remember seeing or speaking with Dr. Grenell on January 19, 2020.

42.    On January 20, 2020, Ms. Ferreira stated to Detective Carvalho that she and Plaintiff had gone on a date on the evening of January 17, 2020.

43.    On January 20, 2020, Ms. Ferreira stated to Detective Carvalho that she drove Plaintiff home after their date on the evening of January 17, 2020, but stated that she did not enter the residence.

44.    On January 20, 2020, when asked by Detective Carvalho why she had a change of clothes when she went to Plaintiff's residence on the night of January 19, 2020.

45.     On January 20, 2020, when asked by Detective Carvalho why she changed her clothes after the alleged assault had taken place on the night of January 19, 2020, Ms. Ferreira stated that she could not remember.

46.     On January 20, 2020, Ms. Ferreira was administered a SANE exam at the Hilo Medical Center.

47.     On January 21, 2020, Detective Carvalho obtained a search warrant to search Plaintiff's body and Plaintiff was forced to undergo buccal swabs, penile swabs, fingernail clippings, and scrapings and hair from the body during the execution of the search warrant by two female SANE nurses and was photographed naked by a SANE nurse in police custody.

48.     On January 21, 2020, Detective Carvalho re-interviewed Ms. Ferreira for a third time because he believed Ms. Ferreira was fabricating her claims against Plaintiff and asked Ms. Ferreira's permission to view Facebook and SMS messages between Ms. Ferreira and Plaintiff.

49.     The Facebook messages between Ms. Ferreira and Plaintiff include messages from Ms. Ferreira inviting Plaintiff to a date on January 17, 2020.

50.     The Facebook messages between Ms. Ferreira and Plaintiff show that Ms. Ferreira had driven to Plaintiff's home on night of January 18, 2020.

51.     The SMS text message from Ms. Ferreira to Plaintiff on January 19, 2020, include Ms. Ferreira (1) sending "heart emojis" to Plaintiff, (2) offering to

cook Plaintiff dinner, (3) stating she was bringing a change of clothes to Plaintiff's home, and (4) asking if she can bring her dog to Plaintiff's residence "again."

### ii. Defendant WAN's Charging Decision

52.     On January 21, 2020, Detective Carvalho conferred with Defendant WAN and informed her of the facts and circumstances surrounding his investigation of Ms. Ferreira's report.

53.     On January 21, 2020, Detective Carvalho informed Defendant WAN that he did not find Ms. Ferreira's statements to be credible and that Detective Carvalho did not believe Plaintiff perpetrated any assault on Ms. Ferreira.

54.     Between January 21, 2020 and January 21, 2020, Detective Carvalho had collected ample evidence to suggest that it was not objectively reasonable for Defendants ROTH and WAN to believe Plaintiff had sexually assaulted Ms. Ferreira.

55.     On January 21, 2020, despite Detective Carvalho providing Defendant WAN with overwhelming evidence that the sexual intercourse between Plaintiff and Ms. Ferreira on January 18, 2020 and January 19, 2020 was consensual, Defendant WAN immediately advised Detective Ferreira to charge Plaintiff with Sexual Assault in the First Degree, Sexual Assault in the Third Degree, and Sexual Assault in the Fourth Degree.

56.    On January 21, 2020, despite it being objectively unreasonable to believe Plaintiff committed any sexual assault of Ms. Ferreira, Defendant WAN directed Detective Carvalho to set unreasonably high bail based on a knowingly false representation that Plaintiff posed a general threat to the public if released pending investigation.

57.    Defendant WAN willfully ignored HPD's investigation of the facts and circumstances and abused her prosecutorial discretion in bad faith by charging Plaintiff in order to embarrass and defame Plaintiff, shame OPD, sow positive public sentiment towards OPA, and benefit Defendants ROTH and WALTJEN's political campaigns.

58.    Defendants WAN and ROTH maintained heightened disdain for perpetrators of sexual assault and, thus, prejudiced Plaintiff due to the nature of Ms. Ferreira's false allegations, her contempt for defense attorneys, personal animosity towards Plaintiff, and her dislike for other OPD employees in the Hilo office.

59.    Defendant WAN knew that Ms. Ferreira was the biological daughter of an HPD employee.

60.    Defendant WAN's decision to charge Plaintiff despite the existence of credible and clearly exculpatory evidence and her decision to set unreasonably

high bail was approved and ratified by Defendant ROTH who had final decision-making authority.

61.    Defendant ROTH ordered, sanctioned, and /or ratified Defendant WAN's charging decision and the continued prosecution of Plaintiff.

62.    Defendant ROTH knew that Ms. Ferreira was the biological daughter of a detective employed by the Hawaii Police Department.

63.    Defendant ROTH's decision to ratify Defendant WAN's decision to charge Plaintiff was based on an improper political motive, i.e., seeking a tactical advantage in his mayoral campaign during the 2020 election.

64.    Defendant ROTH's decision to ratify Defendant WAN's decision to charge Plaintiff was based on an improper political and personal interest, i.e., showing his unfettered loyalty to HPD employees and their families.

65.    Defendant ROTH sanctioned, ratified, ordered, and or facilitated Defendant WAN's decision despite believing that Plaintiff did not assault Ms. Ferreira.

### iii. Detective Carvalho's Post-Charge Investigation

66.    On or about January 21, 2020, Detective Carvalho informed Ms. Ferreira of Plaintiff's charges and that bail was set at FIFTY THOUSAND DOLLARS ($50,000).

67.    On or about January 21, 2020, Detective Carvalho performed a
Facebook preservation request to preserve the Facebook messages between
Plaintiff and Ms. Ferreira.

68.    On or about January 23, 2020, Detective Carvalho re-interviewed Ms.
Ferreria to review the Facebook and SMS messages between Plaintiff and Ms.
Ferreira.

69.    On or about January 23, 2020, Ms. Ferreira stated to Detective
Carvalho that she was beginning to recall new memories, including a new memory
of bringing along her dog to her date with Plaintiff on January 17, 2020.

70.    On or about January 23, 2020, Ms. Ferreira stated to Detective
Carvalho that her newly recalled memories included: (1) spending an evening
watching a movie and eating sushi at Plaintiff's residence on January 18, 2020, (2)
bringing her dog to Plaintiff's residence on January 18, 2020, (3) acts of physical
affection between her and Plaintiff, including Plaintiff rubbing her back and her
hugging and kissing Plaintiff.

71.    On or about January 23, 2020, Ms. Ferreira stated to Detective
Carvalho that she was "attracted" to Plaintiff and "wanted to see how the
relationship would go."

72.    Detective Carvalho did not believe Ms. Ferreira's allegations were
truthful and he repeatedly re-interviewed Ms. Ferreira in an attempt to provide

OPA with ample evidence to negate any reasonable belief that Plaintiff assaulted or engaged in nonconsensual sexual intercourse with Ms. Ferreira.

73.    Detective Carvalho and Officers Cobile, Kobayashi, and Acob zealously investigated Ms. Ferreira's false claims and made every possible effort to highlight Ms. Ferreira's inconsistent and false statements to Defendants WAN and ROTH.

**iv.    The District Court Complaint Procedural History**

74.    On or about January 22, 2020, Defendants ROTH and WAN filed a Complaint in the District Court of the Third Circuit, North and South Hilo Division (the "District Court") in Case No. 3DCW-20-0000178 charging Plaintiff with Sexual Assault in the First Degree in violation of Haw. Rev. Stat § 707-730(1)(a), Sexual Assault in the Third Degree in violation of Haw. Rev. Stat. § 707-732(1)(f), and Sexual Assault in the Fourth Degree in violation of Haw. Rev. Stat. §707-733(1)(a).

75.    When drafting the language of the filed Complaint, Defendants WAN and ROTH deliberately concealed the identify of Ms. Ferreira by referring to her only as "R.F."

76.    Defendants WAN and ROTH concealed the identity of Ms. Ferreira in the charging language of the Complaint to prevent embarrassing the family member of an HPD employee.

77.    Defendants WAN and ROTH concealed the identity of Ms. Ferreira in the charging language of the Complaint to mislead the District Court and the general public into believing Ms. Ferreira was a minor.

78.    Defendants WAN and ROTH filed the Complaint despite (1) believing Plaintiff did not assault Ms. Ferreira and (2) knowing that several of Ms. Ferreira's statements lacked consistency and credibility.

79.    On or about January 22, 2020, the District Court of the Third Circuit's Honorable Judge M. Kanani Laubach ("Judge Laubach") arraigned Plaintiff while Plaintiff was in custody.

80.    At the January 22, 2020 arraignment, the OPD made a special appearance and orally moved to withdraw from representing Plaintiff due to a conflict of interest – i.e., Plaintiff's employment at the OPD as a Deputy Public Defender.

81.    At the January 22, 2020 arraignment, Judge Laubach granted the OPD's motion to withdraw and appointed the Law Offices of Brian J. Delima as Plaintiff's court-appointed counsel.

82.    At the January 22, 2020 arraignment, the State was represented by OPA's Deputy Prosecuting Attorney, Andrew Son ("DPA Son").

83.    At the January 22, 2020 arraignment, Plaintiff moved for release on his own recognizance or a bail reduction and DPA Son objected to Plaintiff's

request for release and requested that Judge Laubach maintain Plaintiff's bail at sixty-one thousand dollars ($61,000).

84.    At the January 22, 2020 arraignment, Judge Laubach denied Plaintiff's oral motion for release, reduced bail to thirty thousand five hundred dollars ($30,500) and ordered Plaintiff to appear on January 24, 2020 for a preliminary hearing.

85.    Immediately following the January 22, 2020, arraignment, Plaintiff was transported to the Hawaii Community Correctional Center in custody.

86.    On January 24, 2020, as ordered by the District Court, Plaintiff appeared for the preliminary hearing out of custody before Judge Harry P. Freitas ("Judge Freitas").

87.    Defendant ROTH attended the January 24, 2020, preliminary hearing in person in order to directly oversee Defendant WAN's handling of the case, to intimidate Plaintiff, to show his unfettered loyalty to HPD employees, and to benefit his mayoral campaign.

88.    On January 24, 2020, Defendant WAN orally moved to continue the preliminary hearing.

89.    On January 24, 2020, Plaintiff's attorney objected to Defendant WANS's oral motion to continue the preliminary hearing and, over Plaintiff's

attorney's objection, Judge Freitas granted Defendant WAN's motion to continue the preliminary hearing.

90.    Between January 22, 2020 and January 24, 2020, Defendants WAN and ROTH reviewed all the additional evidence gathered by Detective Carvalho.

91.    Between January 22, 2020 and January 24, 2020, Defendants WAN and ROTH instructed Ms. Ferreira not to appear for the preliminary hearing.

92.    Between January 22, 2020 and January 24, 2020, Defendants WAN and ROTH knew that they did not have sufficient evidence to establish overcome the burden of proof at a preliminary hearing.

93.    Between January 22, 2020 and January 24, 2020, Defendants WAN and ROTH were aware that Ms. Ferreira had a history of making false claims of assault against other male Hilo residents.

94.    Between January 22, 2020 and January 24, 2020, Defendants WAN and ROTH made a decision to request a continued preliminary hearing in order to convene a grand jury with the intent of misleading that grand jury.

95.    Between January 22, 2020 and January 24, 2020, Defendant ROTH believed that OPA would be able to secure a grand jury indictment by presenting the false testimony of Ms. Ferreira and concealing all clearly exculpatory evidence.

96.    Defendants WAN and ROTH's request to continue the preliminary hearing was part of a larger strategy of circumventing the District Court by

misleading a future grand jury and securing an indictment through Ms. Ferreira's false testimony in a setting where Ms. Ferreira would not be cross-examined by Plaintiff.

97.    Defendant WAN and ROTH's request to continue the preliminary hearing is consistent with the OPA's well-established policy of "double-charging" felonies through both district court complaints and information or indictment where the OPA believes an witness would provide false testimony at a preliminary hearing or that there is insufficient evidence to overcome the burden of proof.

98.    On February 6, 2020, Judge Laubach dismissed the District Court Complaint without prejudice for the reason that the State had filed charges against Plaintiff in Circuit Court by way of grand jury indictment.

vii.    **The OPA's Presentation to the Grand Jury**

99.    Around or between January 22, 2020 and January 25, 2020, Defendant ROTH decided to circumvent the District Court preliminary hearing and secure a grand jury indictment despite his belief that Plaintiff in fact did not sexually assault Ms. Ferreira.

100.    Defendant ROTH's decision to seek a grand jury indictment was influenced by his desire to gain a tactical advantage in his 2020 mayoral campaign and affirm his unfettered loyalty to HPD employees, specifically Ms. Ferreira's Father.

101.   Around or between January 22, 2020 and January 25, 2020, despite believing that Plaintiff did not sexually assault Ms. Ferreira, Defendant ROTH instructed Defendant PERAZICH to draft a felony indictment charging Plaintiff with Sexual Assault in the First Degree in violation of Haw. Rev. Stat § 707-730(1)(a), Sexual Assault in the Third Degree in violation of Haw. Rev. Stat. § 707-732(1)(f), and Sexual Assault in the Fourth Degree in violation of Haw. Rev. Stat. §707-733(1)(a) (the "Indictment")

102.   Around or between January 22, 2020 and January 25, 2020, Defendant ROTH knew that a member of the Grand Jury had recently attended Defendant PERAZICH's wedding.

103.   Around or between January 22, 2020 and January 25, 2020, Defendant ROTH assigned Defendant PERAZICH to initiate the felony indictment in a Hilo case despite Defendant PERAZICH's working in OPA's Kona office.

104.   Around or between January 22, 2020 and January 25, 2020, at the instruction of Defendant ROTH, Defendant PERAZICH instructed and prepared Ms. Ferreira to present knowingly false testimony to the grand jury in order to secure an indictment.

105.   Around or between January 22, 2020 and January 25, 2020, Defendants PERAZICH and ROTH prepared to mislead the grand jury by selectively omitting almost all undisputed evidence provided by Detective

Carvalho's investigation into Ms. Ferreira's false claims, including clearly exculpatory evidence.

106.    Around or between January 22, 2020 and January 25, 2020, Defendants ROTH and PERAZICH became aware that Ms. Ferreira was the Respondent in a Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment filed in the Third Circuit District Court on March 29, 2019 in Case No. 3DSS 19-1-0113 whereby the Petitioner alleged that Ms. Ferreira was making false claims of abuse against the Petitioner.

107.    Around or between January 22, 2020 and January 25, 2020, Defendants ROTH and PERAZICH became aware that Ms. Ferreira's Father was approached in March 2019 by a Hilo man who asked Ms. Ferreira's Father to instruct Ms. Ferreira to stop harassing him.

108.    Around or between January 22, 2020 and January 25, 2020, Defendants ROTH and PERAZICH told Ms. Ferreira's Father that they would prosecute Plaintiff to show their support to HPD employees and their family members.

109.    On January 25, 2020, the grand jury was convened before Grand Jury Counsel, Lincoln Ashida ("Counsel Ashida").

110.   On January 25, 2020, a grand juror informed Counsel Ashida that she may have a conflict of interest because she had attended Defendant PERAZICH's wedding.

111.   On January 25, 2020, prior to the presentation of evidence, a grand juror stated to Defendant PERAZICH that she "owed" wedding pictures to Defendant PERAZICH.

112.   On January 25, 2020, no grand jurors recused themselves from the proceeding.

113.   On January 25, 2020, Defendant PERAZICH presented only two witnesses to testify before the grand jury: (1) Ms. Ferreira, and (2) Detective Carvalho.

114.   On January 25, 2020, Defendant PERAZICH attested to the credibility of Ms. Ferreira.

115.   On January 25, 2020, Defendant PERAZICH instructed or knowingly allowed Ms. Ferreira to give incomplete, false, or completely out of context testimony in a deliberate attempt to mislead the grand jury.

116.   On January 25, 2020, Defendant PERAZICH did not call Dr. Grenell as a witness, withheld evidence that Dr. Grenell was present in the residence at the time Ms. Ferreira had claimed to have been assaulted, and did not ask Detective

Carvalho any questions about Dr. Grenell's statements regarding Ms. Ferreira's presence at Plaintiff's residence on the night of January 17, 2020.

117.   On January 25, 2020, Defendant PERAZICH withheld the SANE examination results from the grand jury that showed there was no evidence of force or injury to Ms. Ferreira.

118.   On January 25, 2020, Defendant PERAZICH withheld the photographs of Ms. Ferreira that were taken by Officer Kobayashi on January 19, 2020 from the grand jury.

119.   On January 25, 2020, Defendant PERAZICH misled the grand jury into believing that Detective Carvalho had only reviewed photos of Ms. Ferreira by withholding the fact that Detective Carvalho had interviewed Ms. Ferreira in person on several occasions and had not observed any injuries.

120.   On January 25, 2020, Defendant PERAZICH withheld the fact that Ms. Ferreira was an HPD detective's daughter from the grand jury.

121.   On January 25, 2020, Defendant PERAZICH withheld the fact that Ms. Ferreira stated to Detective Carvalho that she was attracted to and desired a serious relationship with Plaintiff from the grand jury.

122.   On January 25, 2020, Defendant PERAZICH withheld the fact that Ms. Ferreira had slept over at Plaintiff's home on January 17, 2020 and January 18, 2020.

123.   On January 25, 2020, Defendant PERAZICH withheld all Facebook and SMS text messages between Ms. Ferreira and Plaintiff including authenticated messages showing that Ms. Ferreira (1) invited Plaintiff to a date on January 17, 2020, (2) drove to Plaintiff's home on the evening of January 18, 2020, (3) sent "heart emojis" to Plaintiff on January 19, 2020, (4) offered to cook Plaintiff dinner on January 19, 2020, and (5) brought an extra pair of clothes to Plaintiff's home with the intention of spending the night on January 19, 2020.

124.   On January 25, 2020, Defendant PERAZICH withheld from the grand jury that Ms. Ferreira had kissed Plaintiff on his cheek.

125.   On January 25, 2020, Defendant PERAZICH withheld from the grand jury the fact that Ms. Ferreira had driven Plaintiff home after their January 17, 2020 date in the early morning hours of January 18, 2020.

126.   On January 25 2020, Defendant PERAZICH withheld from the grand jury that Ms. Ferreira's car was blocking Dr. Grenell's vehicle in the late morning of January 18, 2020.

127.   On January 25, 2020, Defendant PERAZICH withheld from the grand jury that Ms. Ferreira had consensual sex with Plaintiff on January 18, 2020 and January 19, 2020.

128.    On January 25, 2020, Defendant PERAZICH withheld from the grand jury that, during the 911 call, Ms. Ferreira declined medical treatment and said she was "OK."

129.    On January 25, 2020, Defendant PERAZICH withheld from the grand jury that Ms. Ferreira knew that Plaintiff was a defense attorney.

130.    On January 25, 2020, after being deliberately misled by Defendants PERAZICH and ROTH, the grand jury returned true bill and indicted Plaintiff on all three counts.

131.    Defendant PERAZICH intentionally and knowingly invaded the province of the grand jury to induce an indictment that directly furthered Defendant ROTH's improper political motives and Defendants' resentment towards OPD and defense attorneys generally.

**viii.    The Pendency of the Circuit Court Case**

132.    On February 4, 2020, Plaintiff was arraigned in the Circuit Court of the Third Circuit – Kona Division (the "Circuit Court") before the Honorable Judge Robert D. S. Kim ("Judge Kim") and Plaintiff entered a plea of not guilty.

133.    On February 4, 2020, Judge Kim asked on the record whether Ms. Ferreira was a minor due to the use of the initials "R.F.," in the Indictment – rather than her full name.

134.   On March 17, 2020, Defendant PERAZICH transmitted a written plea offer to Plaintiff whereby the OPA requested Plaintiff plead guilty to the lesser included charge of Sexual Assault in the Second Degree in exchange for the dismissal of the remaining charges.

135.   Defendant PERAZICH's March 17, 2020 written offer indicated that OPA would be arguing for an indeterminate ten (10) year prison sentence and Plaintiff would be free to argue for probation if Plaintiff agreed to serving eighteen (18) months incarceration.

136.   As consideration for Defendant PERAZICH's March 17, 2020 written offer, Plaintiff would also be required to register as a sex offender with the attorney general and comply with the provisions of Haw. Rev. Stat. Chapter 846E.

137.   Defendant ROTH ratified the transmittal of Defendant PERAZICH's March 17, 2020 written offer.

138.   The purpose behind Defendant ROTH and PERAZICH's written offer was to persuade Plaintiff to plea in order to (1) secure a conviction to the benefit of Defendant ROTH's mayoral campaign, (2) embarrass the OPD, (3) embarrass and defame Plaintiff, (4) prove Defendant's unfettered loyalty to HPD employees, such as Ms. Ferreira's Father, and (5) and sow public support and praise for OPA.

139.   On or about May 1, 2020, Plaintiff's investigator, Walter Ah Mow ("Ah Mow") contacted HPD employee, Lieutenant Sandor Finkey ("Lieutenant

Finkey") to request an interview with Detective Carvalho and Ms. Ferreira's Father.

140.   On or about May 1, 2020, Lieutenant Finkey informed Ah Mow that he had to consult with Defendants ROTH and PERAZICH regarding Ah Mow's request.

141.   Between or around May 1, 2020 and May 5, 2020, Defendant PERAZICH and ROTH instructed Lieutenant Finkey, Detective Carvalho, and Ms. Ferreira's Father not to speak with Ah Mow.

142.   On May 5, 2020, Detective Carvalho told Ah Mow that Defendant PERAZICH told him to not interview with Ah Mow.

143.   On May 5, 2020, Ms. Ferreira's Father stated to Ah Mow that Detective Carvalho relayed the instructions from Defendant PERAZICH to not interview with Ah Mow.

144.   Defendant's PERAZICH and ROTH's had improper political and personal motives behind their explicitly prohibiting Detective Carvalho and Ms. Ferreira's Father from speaking to Ah Mow.

145.   On or about September 23, 2020, Ms. Ferreira's Father testified under oath at a motion hearing that he harbored malicious sentiments towards defense attorneys generally.

146.   On or about November 4, 2020, Defendants ROTH and WALTJEN both won the elections for County of Hawaii Mayor and Prosecuting Attorney, respectively.

147.   On or about December 7, 2020, Defendants ROTH and WALTJEN were officially sworn in as County of Hawaii Mayor and Prosecuting Attorney, respectively.

148.   Between December 7, 2020 and July 14, 2021, Defendant WALTJEN supervised, ratified, and knowingly maintained the prosecution against Plaintiff despite his knowledge that Plaintiff did not sexually assault Ms. Ferreira.

149.   On or about July 14, 2021, at the instruction of Defendants ROTH and WALTJEN, Defendant PERAZICH filed a Motion for Nolle Prosequi with Prejudice as to the Indictment Filed January 30, 2020 (the "State's Motion to Dismiss with Prejudice").

150.   In the State's Motion to Dismiss with Prejudice, Defendant PERAZICH provided no specific basis for the motion.

151.   At all relevant times herein, Defendants WALTJEN, ROTH, PERAZICH, and WAN knew they could not prove Plaintiff committed the crimes alleged in the Indictment at trial beyond a reasonable doubt.

152.  At all relevant times herein, Defendants WALTJEN, ROTH, PERAZICH, and WAN knew they could not prove Plaintiff committed the crimes alleged in the Indictment by clear and convincing evidence.

153.  At all relevant times herein, Defendants WALTJEN, ROTH, PERAZICH, and WAN knew they could not prove Plaintiff committed the crimes alleged in the Indictment beyond a preponderance of the evidence.

154.  At all relevant times herein, Defendants WALTJEN, ROTH, PERAZICH, and WAN knew it was objectively unreasonable to believe Plaintiff committed the crimes alleged in the Indictment.

155.  After being provided with all the information and evidence gathered by Detective Carvalho, Defendants WALTJEN, ROTH, PERAZICH, and WAN knew there was no reasonable suspicion to believe that Plaintiff had committed the crimes alleged in the Indictment.

156.  Defendants WALTJEN, ROTH, and PERAZICH's rationale for requesting the dismissal with prejudice – rather than without prejudice – was based on their longstanding and unwavering belief that Plaintiff did not commit the crimes alleged in the Indictment.

157.  Defendants WALTJEN, ROTH, and PERAZICH knew that Ms. Ferreira's credibility would be eviscerated if Ms. Ferreira were subjected to cross-examination.

158.   Defendants WALTJEN, ROTH, and PERAZICH conspired to delay the filing of the State's Motion to Dismiss in order to ensure that no negative political ramifications would be incurred by them as a result of a dismissal.

159.   Defendants WALTJEN, ROTH, and PERAZICH conspired to delay the filing of the State's Motion to Dismiss in order to ensure that HPD employees, such as Ms. Ferreira's Father, did not feel like Defendants were not loyal to HPD employees.

### ix.    **The Dismissal with Prejudice**

160.   On or about July 16, 2021, Judge Kim granted the State's Motion to Dismiss with Prejudice and dismissed the Indictment with prejudice.

### x.    **OPA's Baseless Marijuana Charge**

161.   On or about October 21, 2020, at the instruction and under the supervision of Defendant ROTH, an OPA employee filed a Complaint in the District Court in Case No. 3DCW-20-0002767 charging Plaintiff with Promotion of a Detrimental Drug in the Third Degree in violation of Haw. Rev. Stat. § 712-1249(1) (the "Marijuana Charge").

162.   On November 24, 2020, DPA Son filed a Motion for Nolle Prosequi Without Prejudice on the Marijuana Charge for further investigation.

163.   On November 27, 2020, Judge Freitas dismissed the Marijuana Charge without prejudice.

164.    OPA employees and Defendant ROTH knew there was no basis to bring the charge because Defendant ROTH knew Plaintiff had an active valid medical marijuana license.

165.    Defendant ROTH's decision to ratify and sanction the filing of the Marijuana Charge was based on his improper political motive, his interest in putting additional pressure on Plaintiff to gain a tactical advantage in the Circuit Court Case, to cause Plaintiff emotional anguish, to publicly embarrass Plaintiff, to embarrass the OPD, and to prove loyalty to HPD employees, such as Ms. Ferreira's Father.

**xi.    The Office of Disciplinary Counsel's Investigation**

166.    On or about January 24, 2020, pursuant to the Hawaii Rules of Professional Conduct, Plaintiff self-reported the charges to the Hawaii Supreme Court - Office of Disciplinary Counsel ("ODC").

167.    On or about January 25, 2020, ODC opened an independent investigation into Ms. Ferreira's report, and the charges brought against Plaintiff in Case No. 3DCW-20-0000178.

168.    Between January 25, 2020, and March 13, 2020, ODC investigated the facts and circumstances relating to Case No. 3DCW-20-0000178 and 3CPC-20-0000089.

169.    On March 13, 2020, ODC Chief Disciplinary Counsel, Bradley R. Tamm, wrote Plaintiff a letter indicating that ODC found no clear and convincing evidence to support an actionable finding and that ODC was discontinuing its investigation and closing the matter.

**x.    Statement of Causation**

170.    As a direct and proximate result of the foregoing, Plaintiff was arrested, incarcerated, prosecuted, and defamed in violation of rights guaranteed to him by applicable provisions of the Constitution of the United States and the Constitution of the State of Hawaii.

171.    As a direct and proximate result of the foregoing, Plaintiff's right to adequate, effective, and meaningful access to the courts under the Fifth and Fourteenth Amendments to the Constitution of the United States were violated with respect to OPA's prosecuting of Plaintiff in Case Nos. 3DCW-20-0000178, 3CPC-20-0000089, and 3DCW-20-0002767.

172.    As a direct and proximate result of the foregoing, Plaintiff has suffered severe emotional distress, worry, loss of affection, depression, anxiety, humiliation, loss of enjoyment, social isolation, public death threats, public terroristic threats to safety and wellbeing, and other non-economic damages to be proven at trial.

173.   As a direct and proximate result of the foregoing, Plaintiff was fired from the OPD, incurred lost wages, lost future wages, irreversible harm to professional reputation, loss of career opportunities, and other economic injuries to be proven at trial.

174.   As a direct and proximate result of the foregoing, Plaintiff has incurred costs, fees, expenses, and losses of earnings and income in amounts to be proven at trial.

**FIRST CAUSE OF ACTION**
**(Malicious Prosecution, Fabrication of Evidence, and Abuse of Process)**

175.   Plaintiff hereby incorporates all of the allegations set forth in paragraphs 1 through 174, above.

176.   Plaintiff is informed and believes, and thereupon alleges, that the Defendants acted and/or purported to act herein under color of statutes, ordinances, rules, regulations, customs, policies, practices, and/or usages of the County of Hawaii, State of Hawaii, and in the scope and course of their employment as prosecuting attorneys and/or police officers.

177.   Plaintiff is informed and believes, and thereupon alleges, that the Defendants impermissibly used their offices and/or law enforcement powers and authority to wrongfully arrest and incarcerate him without reasonable or just cause thereby depriving him of his right to adequate, effective, and meaningful access to

the courts, and to maliciously prosecute and/or influence the prosecution of Plaintiff impermissibly.

178.   Plaintiff is informed and believes, and thereupon alleges that the Defendants impermissibly used their offices and/or law enforcement powers and authority to conduct surveillance upon Plaintiff, fabricate evidence, suppress evidence, omit evidence, make untruthful statements and reports about Plaintiff, and wrongfully deprive Plaintiff of his property and liberty without due process of law thereby improperly using the court process to further an ulterior purpose.

179.   Plaintiff is informed and believes, and thereupon alleges, that the Defendants acted to cover up and hide their misconduct and to subvert and prevent inquiries and investigations into their acts and omissions and bolster their personal political ambitions.

180.   Plaintiff is informed and believes, and thereupon alleges, that Defendant Hawaii County violated Plaintiffs constitutional rights through actions undertaken by officials with final policy making authority, including but not limited to, Defendants ROTH and WALTJEN, both of whom intentionally and knowingly defended, ratified, sanctioned, supervised, instructed, excused, and/or concealed the illegal and unlawful misconduct of themselves and Defendants WAN and PERAZICH.

181.   Plaintiff is informed and believes, and thereupon alleges, that Defendants acted herein with deliberate indifference to Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and rights guaranteed to Plaintiff by the Constitution of the State of Hawaii.

## SECOND CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

182.   Plaintiff hereby incorporates all of the allegations set forth in paragraphs 1 through 181, above.

183.   Plaintiff is informed and believes, and thereupon alleges, that Defendants in their individual capacities knowingly, deliberately, intentionally, and maliciously caused Plaintiff to suffer enormous mental and emotional distress in amounts to be proven at trial.

## THIRD CAUSE OF ACTION
### (Defamation)

184.   Plaintiff hereby incorporates all of the allegations set forth in paragraphs 1 through 183, above.

185.   Plaintiff is informed and believes, and thereupon alleges, that Defendants in their individual capacities made false statements and/or reports about Plaintiff, knowing of the falsity of those statements, and intending thereby to defame and cause damages to Plaintiff.

## FOURTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

186.   Plaintiff hereby incorporates all of the allegations set forth in paragraphs 1 through 185, above.

187.   Plaintiff is informed and believes, and thereupon alleges, that Defendants in their individual capacities negligently caused Plaintiff to suffer enormous mental and emotional distress in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

    (a) For general damages according to the proof thereof at trial;

    (b) For special damages according to the proof thereof at trial;

    (c) For punitive or exemplary damages;

    (d) For reimbursement of Plaintiff's costs and fees incurred herein;

    (e) For such further and additional relief as the Court deems appropriate and just.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the

factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to Provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: Hilo, Hawaii, July 15, 2023.

PUEO KAI MCGUIRE
Pro Se Plaintiff

---

## DEMAND FOR JURY TRIAL

Plaintiff, PUEO KAI MCGUIRE, hereby demands a jury trial as to all triable issues herein.

Dated: Hilo, Hawaii, July 15, 2023

PUEO KAI MCGUIRE
Pro Se Plaintiff